UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| In re FOSSIL, INC. DERIVATIVE LITIGATION | § | Civil Action No. 3:06-cv-01672-F |
| | § | |
| | § | |
| | § | |
| This Document Relates To: | § | |
| | § | |
| ALL ACTIONS. | § | |
| | § | |

**PLAINTIFFS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF DERIVATIVE SETTLEMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 23.1**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. LITIGATION ..... 4

A. Commencement of the Action ..... 4

B. The Restatement ..... 5

C. Plaintiffs' First Amended Complaint and Motion to Dismiss Proceedings ..... 5

D. Plaintiffs' Second Amended Complaint and Motion to Dismiss Proceeding ..... 6

E. Settlement Negotiations ..... 6

III. ARGUMENT ..... 7

A. Courts Favor Settlement of Complex Litigation ..... 7

B. The Settlement Is Fair, Adequate and Reasonable ..... 7

C. The Settlement Meets the Fifth Circuit's Six-Pronged Test of Fairness ..... 9

1. There Is No Fraud or Collusion ..... 9

2. The Stage of the Proceedings Supports Approval of the Settlement ..... 10

3. The Probability of Success on the Merits and the Range of Possible Recovery Support Approval of the Settlement ..... 12

4. The Settlement Falls Within the Range of Reasonableness ..... 14

5. The Complexity, Expense and Likely Duration of This Litigation Supports Approval of the Settlement ..... 16

6. The Opinion of Plaintiffs' Counsel Favors Approval of the Settlement ..... 17

IV. THE NEGOTIATED AMOUNT OF ATTORNEYS' FEES AND EXPENSES IS FAIR AND REASONABLE ..... 19

V. CONCLUSION ..... 21

# TABLE OF AUTHORITIES

Page

## CASES

*Armstrong v. Bd. of Sch. Dirs.*,
616 F.2d 305 (7th Cir. 1980) .......... 17

*Ayers v. Thompson*,
358 F.3d 356 (5th Cir. 2004) .......... 8

*Bacas v. Way*,
No. 4:07-CV-00456, slip op. (S.D. Tex. Apr. 1, 2008) .......... 16

*Boeing Co. v. Van Gemert*,
444 U.S. 476 (1980) .......... 20

*City of Pontiac Gen. Employees' Ret. Sys. v. Langone*,
No. 2006-cv-122302, slip op. (Fulton County Ga. June 10, 2008) .......... 16

*Cohn v. Nelson*,
375 F. Supp. 2d 844 (E.D. Mo. 2005) .......... 16

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) .......... 7, 8, 11, 17

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) .......... 18

*DeHoyos v. Allstate Corp.*,
240 F.R.D. 269 (W.D. Tex. 2007) .......... 9

*Fickinger v. C.I. Planning Corp.*,
646 F. Supp. 622 (E.D. Pa. 1986) .......... 14

*Fisher Bros. v. Cambridge-Lee Indus., Inc.*,
630 F. Supp. 482 (E.D. Pa. 1985) .......... 17

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .......... 19

*In re AOL Time Warner S'holder Derivative Litig.*,
No. 02 Civ. 6302(SWK), 2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006) .......... 18

*In re Atmel Corp. Derivative Litig.*,
No. C-06-04592 JF (HRL), slip. op. (N.D. Cal. Mar. 31, 2010) .......... 15, 19

**Page**

*In re Corrugated Container Antitrust Litig.*,
659 F.2d 1322 (5th Cir. 1981) .......... 7

*In re Elec. Data Sys. Corp. Sec. Litig.*,
226 F.R.D. 559 (E.D. Tex. 2005) .......... 16

*In re Indep. Energy Holdings PLC*,
No. 00 Civ. 6689(SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) .......... 10

*In re NVIDIA Corp. Derivative Litig.*,
No. C-06-06110-SBA (JCS), 2009 U.S. Dist. LEXIS 24973
(N.D. Cal. Mar. 18, 2009) .......... 16, 20

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) .......... 12, 16

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997) .......... 13

*In re Rambus Inc. Derivative Litig.*,
No. C 06-3513 JF (HRL), 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) .......... 15

*Ingram v. Coca-Cola Co.*,
200 F.R.D. 685 (N.D. Ga. 2001) .......... 19

*Jackson v. Capital Bank & Trust Co.*,
No. 90-4734, 1994 U.S. Dist. LEXIS 3899 (E.D. La. Mar. 30, 1994) .......... 9

*Karstedt v. Isenberg*,
No. 4:07-cv-00509, slip op. (S.D. Tex. May 14, 2008) .......... 16

*Lelsz v. Kavanagh*,
783 F. Supp. 286 (N.D. Tex. 1991), *aff'd*, 983 F.2d 1061 (5th Cir. 1993) .......... 8

*Lewis v. Newman*,
59 F.R.D. 525 (S.D.N.Y. 1973) .......... 12

*Lyons v. Marrud, Inc.*,
No. 66 Civ. 415, 1972 U.S. Dist. LEXIS 13401 (S.D.N.Y. June 6, 1972) .......... 18

*Maher v. Zapata Corp.*,
714 F.2d 436 (5th Cir. 1983) .......... 7, 8, 14, 21

*Manchaca v. Chater*,
927 F. Supp. 962 (E.D. Tex. 1996) .......... 11, 16

**Page**

*McNary v. Am. Sav. & Loan Ass'n*,
76 F.R.D. 644 (N.D. Tex. 1977) .......... 9

*Miller v. Republic Nat'l Life Ins. Co.*,
559 F.2d 426 (5th Cir. 1977) .......... 7

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970) .......... 20, 21

*MM Cos. v. Liquid Audio, Inc.*,
813 A.2d 1118 (Del. 2003) .......... 12

*Nelson v. Bennett*,
662 F. Supp. 1324 (E.D. Cal. 1987) .......... 12

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972) .......... 14

*Omnicare, Inc. v. NCS Healthcare, Inc.*,
818 A.2d 914 (Del. 2003) .......... 12

*Pearson v. Ecological Sci. Corp.*,
522 F.2d 171 (5th Cir. 1975) .......... 7

*Pettway v. Am. Cast Iron Pipe Co.*,
576 F.2d 1157 (5th Cir. 1978) .......... 8

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*,
390 U.S. 414 (1968) .......... 16

*Reed v. GMC*,
703 F.2d 170 (5th Cir. 1983) .......... 8, 9, 17

*Schwartz v. TXU Corp.*,
No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077 (N.D. Tex. Nov. 8, 2005) .......... 16

*Travis v. Mittelstaedt*,
No. 2:06-cv-02341-JAM-GGH, slip op. (E.D. Cal. July 16, 2009) .......... 15

*Unite Nat'l Ret. Fund v. Watts*,
No. 04-cv-3603 (DMC), 2005 U.S. Dist. LEXIS 26246 (D.N.J. Oct. 28, 2005) .......... 19

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982) .......... 17

**Page**

*Williams v. First Nat'l Bank*,
216 U.S. 582 (1910) .......... 7

*Young v. Katz*,
447 F.2d 431 (5th Cir. 1971) .......... 8

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
§78u-4 .......... 5

Federal Rules of Civil Procedure
Rule 9(b) .......... 5
Rule 12(b)(6) .......... 5
Rule 23.1 .......... 7, 15
Rule 23.1(c) .......... 7

# I. INTRODUCTION

Plaintiffs, City of Pontiac Policeman's and Fireman's Retirement System and Robert B. Minich, submit this Memorandum in support of their motion for final approval of the settlement of this derivative action brought on behalf of Fossil, Inc. ("Fossil" or the "Company") against certain of its current and former officers and directors. The terms and conditions of the settlement are set forth in the Stipulation and Agreement of Settlement dated May 4, 2011 ("Stipulation"), which was previously filed with the Court.[1] Dkt. No. 195. The settlement represents an excellent resolution for Fossil and its shareholders in a case of substantial complexity and is the product of Plaintiffs' extensive investigation, prosecution and arm's-length, multi-year settlement negotiations with the substantial assistance of the Honorable Howard B. Wiener, Justice of the California Court of Appeal (Ret.) ("Justice Wiener"), the last of the mediators used by the parties.

As a result of the prosecution and settlement of the Action, Fossil has adopted various industry leading corporate governance measures that not only directly address Plaintiffs' stock option abuse allegations and are designed to prevent the wrongdoing alleged in the Action from reoccurring in the future but also significantly enhance Fossil's corporate governance practices and internal controls. As explained in the accompanying Declaration of Daniel J. Morrissey ("Morrissey Decl."), a leading corporate governance expert and a professor at Gonzaga University School of Law, the corporate governance changes will not only "protect Fossil and its stockholders from the type of improper, backdating activity that is exemplified by this lawsuit but they will also make the Company's board more accountable to Fossil's public shareholders." Morrissey Decl., ¶14. Fossil has, among other things (a) declassified the election of directors to the Board; (b) adopted majority

---

[1] All capitalized terms not herein defined shall have the same meanings as set forth in the Stipulation.

voting for director elections; (c) repriced mispriced options so they carry the exercise prices they should have carried if they were priced at fair market value on the actual date of grant; (d) engaged an independent compensation consultant and independent counsel to improve the Compensation Committee approval and oversight process; (e) designated specific members of in-house legal, accounting, and human resources staffs to oversee documentation; and (f) adopted and improved incentive plans designed to prevent the backdating of stock options. Stipulation, ¶¶2.4-2.9. In addition, the settlement provides for a cash payment of $8.6 million to Fossil from the Individual Defendants' insurance carriers. The $8.6 million cash payment to Fossil equals more than 51% of the $16 million restatement charge.

While the precise value to be placed on the settlement is difficult to quantify, there is no question that "[t]he corporate governance improvements, stock option (and related) remedial measures, and compensatory benefits to be received by the Company are meaningful and substantive." *See* accompanying Affidavit of Marc I. Steinberg ("Steinberg Aff."), at III (A).[2] As Professor Marc I. Steinberg notes, "it may be asserted that a portion of the increased price of Fossil stock during the past year (e.g., the price of Fossil common stock closed at $38.84 per share on July 15, 2010 and closed at $102.94 on May 20, 2011) is due to the implementation of enhanced corporate governance measures. During this period, the appreciation in value of Fossil common stock has greatly outperformed the S&P 400 Consumer Discretionary Index." *Id.*, at IV. Professor Morrissey states that "[s]ince last fall when some of these reforms were first implemented, the value of Fossil's stock has doubled and the Company now has a market capitalization of approximately

---

2 *See also* Morrissey Decl., ¶10 ("it is my opinion that the payments to Fossil to be made by defendants which will total over $8.6 million and the reforms the Company has made and has agreed to make, both of which result from this litigation, are a substantial achievement and promote the interests of justice").

$6.5 billion. If a mere 5% of that over $3 billion increase in the Company's value can be attributed to better corporate governance (which is a modest amount according to the studies discussed above that range from 10% to 18.3%) that would mean that the reforms have already added approximately $150 million to the value of Fossil." Morrissey Decl., ¶57.

The settlement resolves a contentious, hard fought, and complex shareholder derivative action. Prior to reaching the settlement, Plaintiffs' Counsel conducted an extensive investigation, which included the review of all publicly available data concerning Fossil's option grants, stock trading by officers and directors, option granting practices, corporate governance, and accounting and financial reporting; consulted with experts in accounting, damages, stock option granting practices, and corporate governance; performed multiple analyses of Fossil's option grant timing and performance based on accepted methodologies; prepared and filed detailed complaints; successfully opposed Defendants' motions to dismiss (in the main); and reviewed and analyzed more than 15,000 pages of documents and electronically stored information produced by Defendants. The parties also engaged in hard-fought arm's-length negotiations during the course of the litigation, including several attempts of mediations. *See* accompanying Declaration of James I. Jaconette in Support of Motion for Final Approval of Derivative Settlement ("Jaconette Decl."), ¶¶30-33.

As a result of the substantial benefits conferred upon Fossil and its shareholders, Fossil has agreed to pay Plaintiffs' Counsel for their reasonable attorneys' fees and expenses. Stipulation, ¶5.1. Plaintiffs and Fossil, with the assistance of Justice Wiener, negotiated the amount of attorneys' fees and expenses that Fossil has agreed to pay Plaintiffs' Counsel. As a result of those arm's-length negotiations, Fossil has agreed to pay Plaintiffs' Counsel 85,423 shares of Fossil common stock as of May 4, 2011, subject to a downward adjustment if Fossil's stock price increases and an upward adjustment if Fossil's stock price decreases, and the right to acquire options for up to 32,000 shares of Fossil common stock.

Given the outstanding results obtained for Fossil and its shareholders, Plaintiffs respectfully submit that the Court should approve the settlement in its entirety as fair, reasonable, and adequate.

## II. LITIGATION

The following is a brief procedural history of the Action. For a more detailed history of the Action, the efforts of Plaintiffs' Counsel in litigating this Action, the claims asserted, the motion practice, the investigation and discovery undertaken, the settlement negotiations, the risks of continued litigation, and why the settlement is in the best interests of Fossil and its shareholders, the Court is respectfully referred to the Jaconette Declaration.

### A. Commencement of the Action

On September 13, 2006, the first shareholder derivative complaint on behalf of Fossil against certain of its current and former directors and officers for allegedly backdating stock option grants to Fossil insiders was filed in the United States District Court for the Northern District of Texas (the "Court"). *See City of Pontiac Policeman's and Fireman's Retirement System v. Kartsotis, et al.*, Case No. 3:06-cv-01672-P (N.D. Tex.). The complaint alleged that between at least 1996 and 2006, Individual Defendants engaged in a secret scheme to backdate stock option awards to Fossil executives and employees. More particularly, the complaint detailed Individual Defendants' pattern and practice of selecting stock option grant dates with the benefit of hindsight to coincide with historically low trading prices for Fossil stock. Shortly thereafter, an additional action was filed in this Court containing similar allegations. *See Minich v. Kartsotis, et al.*, Case No. 3:06-cv-01977-M (N.D. Tex.).

On November 29, 2006, the Court issued an order consolidating the two derivative cases into the Action, and on December 13, 2006, issued an order appointing City of Pontiac Policeman's and Fireman's Retirement System and Robert B. Minich as Co-Lead Plaintiffs and appointing Robbins



626091_1

Geller Rudman & Dowd LLP and Robbins Umeda LLP as Co-Lead Counsel and the Kendall Law Group as Liaison Counsel.

### B. The Restatement

On May 7, 2007, Fossil disclosed that it would need to restate its previously issued financial statements to record additional non-cash charges for stock-based compensation expense related to past stock options. The Company also disclosed that its previously issued financial statements and earnings press releases should no longer be relied upon. Subsequently, Fossil disclosed that it had recorded a non-cash charge of approximately $16 million to correct errors in the accounting for stock-based compensation.

### C. Plaintiffs' First Amended Complaint and Motion to Dismiss Proceedings

On June 29, 2007, Plaintiffs filed a First Amended Consolidated Verified Shareholder Derivative Complaint ("Complaint"). The Complaint asserted claims relating to the alleged backdating and retroactive pricing of stock option grant awards and the issuance of false and misleading proxy statements and other U.S. Securities and Exchange Commission ("SEC") reports designed to conceal such backdating from shareholders against certain Fossil directors and officers. The Complaint also sought damages and injunctive relief against Defendants for the injuries sustained by Fossil as a result of the options backdating scheme.

Between July 6, 2007 and August 21, 2007, the Company and certain Individual Defendants filed lengthy motions to dismiss the Complaint. Fossil sought dismissal of the Complaint based upon Plaintiffs' failure to make a pre-suit demand upon the Fossil Board of Directors ("Board"). The moving Individual Defendants sought dismissal of the Complaint under the Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995.

For several months thereafter, while the motions to dismiss were pending, the parties engaged in good faith, arm's-length negotiations in an effort to resolve the claims asserted in the

Action. Towards that end, on July 29, 2008, the parties participated in an all-day in-person mediation session in San Francisco, California. The mediation did not result in a resolution of the Action and litigation resumed. Thereafter, Plaintiffs filed their written opposition to the dismissal motions. Plaintiffs argued that the Complaint adequately alleged futility of demand and stated actionable claims for violations of the federal securities laws and state fiduciary laws against the Individual Defendants. On July 15, 2009, the Court conducted a hearing on the dismissal motions. After carefully considering the arguments of counsel, on July 17, 2009, the Court substantially denied the motions to dismiss and granted Plaintiffs leave to partially re-plead their Rule 10b-5 and §14(a) claims.

### D. Plaintiffs' Second Amended Complaint and Motion to Dismiss Proceeding

On October 13, 2009, Plaintiffs filed their Second Amended Consolidated Verified Shareholder Derivative Complaint, which the Defendants moved to dismiss on December 9, 2009. Plaintiffs filed their opposition to the second round of motions to dismiss on January 7, 2010, and the Defendants filed their reply brief on January 14, 2010. Thereafter, on January 19, 2010, the Court held a hearing on the motion to dismiss, and on May 19, 2010, issued a detailed written Order denying the motion to dismiss in its entirety.

### E. Settlement Negotiations

Following the denial of the motions to dismiss, the parties resumed settlement discussions and ultimately agreed to engage in a formal mediation process before Justice Wiener. Some of the parties participated in all-day, in-person mediation sessions on August 15, 2010 in San Diego. Additional mediation discussions between various parties took place between and after the in-person mediation sessions. These settlement negotiations eventually led to an agreement-in-principle for the resolution of the Action in its entirety on the terms set forth in the Stipulation. The Fossil Board

has approved the settlement and each of its terms, as set forth in the Stipulation, as in the best interest of Fossil and its shareholders.

## III. ARGUMENT

### A. Courts Favor Settlement of Complex Litigation

It has long been settled that compromises of disputed claims are favored by the courts. *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). The Fifth Circuit has consistently held that, as a result of their highly-favored status, settlements "'will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'" *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) (citation omitted); *Pearson v. Ecological Sci. Corp.*, 522 F.2d 171, 176 (5th Cir. 1975). Settlements of shareholder litigation are "particularly favored" and are not to be lightly rejected. *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *see also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). "Settlements of shareholder derivative actions are particularly favored because such litigation is 'notoriously difficult and unpredictable.'" *Maher*, 714 F.2d at 455 (citation omitted). Moreover, settlements of complex cases, such as derivative suits, contribute greatly to the efficient utilization of scarce judicial resources and achieve the speedy resolution of justice, for a "just result is often no more than an arbitrary point between competing notions of reasonableness." *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1325 (5th Cir. 1981).

### B. The Settlement Is Fair, Adequate, and Reasonable

Federal Rule of Civil Procedure 23.1 governs a district court's analysis of the fairness of a settlement of a shareholder derivative action. Under Rule 23.1, a derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c). The general standard for final approval of a

proposed settlement, as repeatedly enunciated by the Fifth Circuit, is whether the proposed settlement is "fair, adequate, and reasonable" and has been entered into without collusion between the parties. *Ayers v. Thompson*, 358 F.3d 356, 368 (5th Cir. 2004); *Cotton*, 559 F.2d at 1330.

The "trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'" *Cotton*, 559 F.2d at 1330 (citation omitted). The very object of a compromise """is to avoid the determination of sharply contested and dubious issues."'" *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971) (citations omitted). Moreover, the trial judge is not required to decide the merits of the action or substitute a different view of the merits for that of the parties or counsel. *Maher*, 714 F.2d at 455. A court should determine whether the settlement was reached without fraud or collusion and that it is fair, reasonable, and adequate. *Id.*

Courts in this Circuit have recognized that a presumption of correctness attaches to a settlement negotiated at arm's length between experienced and capable counsel. *Lelsz v. Kavanagh*, 783 F. Supp. 286, 297 (N.D. Tex. 1991), *aff'd*, 983 F.2d 1061 (5th Cir. 1993). The Fifth Circuit has recognized that courts must rely to a large degree on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement. *Reed v. GMC*, 703 F.2d 170, 175 (5th Cir. 1983). Thus, if experienced counsel determine that a settlement is in the best interests of all parties, "the attorney's views must be accorded great weight." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978).

Here, Plaintiffs' Counsel have conducted a careful analysis of the law and facts relating to the allegations and have concluded that the benefits to be conferred on Fossil and its shareholders as a result of the settlement provide for an excellent resolution of this shareholder derivative action, will allow the Company to put these matters to rest, and far outweigh the potential benefits of

continued prosecution which could prolong the case for several more years without any guarantee that the Company would obtain benefits in excess of the benefits obtained from the settlement. In addition, the Fossil Board has approved the settlement as in the best interest of Fossil and its shareholders.

### C. The Settlement Meets the Fifth Circuit's Six-Pronged Test of Fairness

Once satisfied that counsel adequately represented those for whom the litigation is brought, and has bargained for the proposed settlement in good faith, the """only question""" for the court to determine """is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.""" *McNary v. Am. Sav. & Loan Ass'n*, 76 F.R.D. 644, 649 (N.D. Tex. 1977) (citations omitted). The Fifth Circuit has established a six-pronged test to be applied to proposed settlements: (1) the assurance that there is no fraud or collusion behind the settlement; (2) the stage of the proceedings and the amount of discovery completed; (3) the probability of plaintiffs' success on the merits; (4) the range of possible recovery; (5) the complexity, expense, and likely duration of the litigation; and (6) the opinions of plaintiffs' counsel, the company, and the company's shareholders. *Reed*, 703 F.2d at 172. As discussed below, the settlement here easily passes the six-pronged test.

#### 1. There Is No Fraud or Collusion

The most important factor to be considered by the court is whether the settlement is free from fraud or collusion. *Jackson v. Capital Bank & Trust Co.*, No. 90-4734, 1994 U.S. Dist. LEXIS 3899, at *10 (E.D. La. Mar. 30, 1994). Courts in this Circuit presume that settlement negotiations are free from fraud or collusion, unless affirmative evidence indicates otherwise. *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007). Here, the evidence clearly indicates that the parties negotiated the settlement following extensive litigation efforts and arm's-length negotiations, including several mediations with three mediators over a multi-year period. Jaconette Decl., ¶¶24-

26, 34. Ultimately, the settlement was reached with the substantial assistance of Justice Wiener. As Justice Wiener explains:

> At all times the discussions and negotiations were conducted in a diligent and conscientious manner. Clearly, they were at arm's length in a zealous fashion. To say that at certain times the negotiations were contentious would be an understatement. The mediation included repeated and arduous negotiation over the substantive terms of the settlement. It was apparent that all parties took each term of the corporate governance and economic terms of the settlement very seriously.

*See* accompanying Declaration of Justice Howard B. Wiener (Ret.) in Support of Unopposed Motion for Final Approval of Derivative Settlement ("Wiener Decl."), at ¶5.

The evidence shows that each element of the settlement was extensively negotiated between experienced counsel with a firm understanding of the strengths and weaknesses of the claims and defenses asserted and was reached only after extensive negotiations between counsel for Plaintiffs, Fossil, and Defendants, with the substantial assistance of Justice Wiener. *See* Wiener Decl., ¶8 ("the settlement . . . was the result of a rigorous arm's-length negotiation conducted in a fair and reasonable manner"). As courts have observed, "the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable." *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003).

### 2. The Stage of the Proceedings Supports Approval of the Settlement

The stage of the proceedings and the amount of discovery is another factor which courts consider in determining whether a settlement is fair, reasonable, and adequate. Here, both the knowledge of Plaintiffs' Counsel and the proceedings themselves have reached a stage where Plaintiffs' Counsel could make an intelligent evaluation of the claims asserted and the propriety of settlement.

There is no question that all parties were well informed about the relevant facts at the time the settlement was reached.[3] Plaintiffs' Counsel reviewed and analyzed hundreds of stock option grants and officer and director stock and option transactions, in addition to option grant timing and performance based on different methodologies. Jaconette Decl., ¶3. Plaintiffs' Counsel also consulted with experts in accounting, damages, stock option granting practices, and corporate governance. *Id.* Counsel also reviewed more than 15,000 pages of documents produced by Defendants concerning, among other things, the Company's historical stock option granting practices, existing governance and equity incentive procedures, the Company's Bylaws and Articles of Incorporation, minutes from meetings of the Board, and a spreadsheet detailing Fossil's stock options grants. *Id.*, ¶33. In addition, the parties engaged in extensive motion practice regarding the adequacy of the pleadings which further highlighted the legal and factual issues. The parties also participated in extensive settlement negotiations where the strengths and weaknesses of the parties' respective positions were extensively explored. Jaconette Decl., ¶¶38-40; Wiener Decl., ¶¶4-5. Having completed sufficient investigation and discovery to properly evaluate the case, Plaintiffs' Counsel settled the Action on a highly favorable basis to Fossil and its shareholders, eliminating the substantial expense, risk, and uncertainty of continued litigation. Accordingly, the stage of the proceedings strongly supports approval of the settlement. *See Cotton*, 559 F.2d at 1332; *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).

---

3 As Justice Wiener states, "an entire day, July 15, 2010, was spent in the first mediation to identify the respective issues and to determine each party's position on each issue." Wiener Decl., ¶4.

### 3. The Probability of Success on the Merits and the Range of Possible Recovery Support Approval of the Settlement

Derivative claims are by their nature difficult on the merits. In evaluating the settlement of a shareholder's action, the courts have long recognized that such litigation "is notably difficult and notoriously uncertain," *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973), and that compromise is particularly appropriate, *Nelson v. Bennett*, 662 F. Supp. 1324, 1334 (E.D. Cal. 1987). Indeed, the appellate court, in affirming the district court's approval of a settlement of a derivative action, noted that "the odds of winning [a] derivative lawsuit [are] extremely small" because "derivative lawsuits are rarely successful." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). While Plaintiffs successfully opposed Defendants' attacks on the pleadings, that was only the first of many obstacles that Plaintiffs would need to overcome to successfully secure a judgment against the Individual Defendants at trial.

Although Plaintiffs believe that the derivative claims asserted herein are meritorious, they faced substantial difficulty in proceeding. One of the biggest hurdles would have been overcoming the business judgment rule. Under the business judgment rule there is a "'presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *MM Cos. v. Liquid Audio, Inc.*, 813 A.2d 1118, 1127 (Del. 2003) (citations omitted). Unless the procedural presumption of the business judgment rule is rebutted, the court will defer to the directors' business decisions if they may be """attributed to any rational business purpose."'" *Omnicare, Inc. v. NCS Healthcare, Inc.*, 818 A.2d 914, 928 (Del. 2003) (citations omitted). Defendants have continued to vigorously deny the claims alleged by Plaintiffs and have continued to assert that, at all times, they acted properly, exercised sound business judgment and acted in good faith, in a manner that they reasonably believed to be in the best interests of Fossil, and consistent with their duties under applicable law. Plaintiffs also faced the likelihood that the Individual Defendants would assert that

Fossil's Articles of Incorporation contained exculpatory provisions which shielded them from potential liability. Although Plaintiffs considered their arguments to be strong against the protections afforded by the business judgment rule and Fossil's liability raincoat provisions with respect to the challenged acts, the prospect that the Individual Defendants could have been shielded by these protective umbrellas made establishing liability in the Action uncertain.

Moreover, had the Action continued, the Individual Defendants would have advanced credible arguments that might have been persuasive to the Court at summary judgment or trial. There is no question that the issue of the Individual Defendants' liability for the alleged stock option backdating at Fossil would have been hotly contested if the Action proceeded, and the results would be uncertain at best. Based on the record and applicable law, it is clear that these were serious risks in overcoming the Individual Defendants' potential defenses and in establishing liability.

Furthermore, the issue of damages would have been subject to further litigation and would have been vigorously disputed and the subject of expert testimony proffered by all parties. The assessment of this crucial element of Plaintiffs' claims would have been reduced at trial to a "battle of the experts." It is far from certain how a jury or the Court would consider these competing experts' opinions. Indeed, a jury or the Court might be swayed by defense experts seeking to establish that Fossil suffered no damage at all or that any damages were caused by factors other than the Individual Defendants' alleged wrongdoing. *See, e.g.*, *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Moreover, stock option backdating cases are a relatively recent vintage of shareholder derivative action. As a result, damage theories have not yet been fully fleshed out or tested at trial. While Plaintiffs believed that they could have established damages at trial, a jury or the Court could conceivably find that there were no damages or a mere fraction of the amount Plaintiffs contended.

Notably, even if Plaintiffs were successful at trial, the Court likely could not have ordered Fossil to adopt the corporate governance reforms Plaintiffs achieved in the settlement, which, as the Fifth Circuit cogently observed, may likely be the most important relief that can be secured in a shareholder derivative action:

> [W]here, as here, the derivative suit is largely an attack on past corporate management practices, as well as on some present officers and directors, the dollar amount of a possible judgment, which is essentially the sole goal in the class action damage suit, is not the sole, and may well not be the most important, matter to be considered, for the effects of the suit on the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment in its favor in the particular action.

*Maher*, 714 F.2d at 461; *see also* Morrissey Decl., ¶¶49-50, Steinberg Aff., III(A). Thus, as opposed to the real risk of no recovery at all for Fossil, the Settlement guarantees a highly favorable result with the payment of over $8.6 million to Fossil in addition to the implementation of valuable corporate governance reforms designed both to address and prevent errors in the Company's stock option granting practices as well as to make Fossil's Board more accountable to its shareholders. *See* Morrissey Decl., ¶¶13-14, Steinberg Aff., III. Accordingly, the settlement is likely the best possible result and more valuable to the Company and its shareholders than a judgment achieved after a successful trial.

**4. The Settlement Falls Within the Range of Reasonableness**

Courts agree that the determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum. Rather, as one court explained, "there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *Fickinger v. C.I. Planning Corp.*, 646 F. Supp. 622, 630 (E.D. Pa. 1986). This settlement, providing for the payment of over $8.6 million to Fossil and the adoption of valuable corporate governance reforms, provides significant benefits to Fossil and its shareholders, and directly address Plaintiffs' allegations. Thus, it clearly falls within the "range of reasonableness." It is a highly

favorable result for the Company and would not have been achieved at all without Plaintiffs' and their counsel's efforts. The corporate governance provisions will result in a more valuable company going forward and avoid future problems related to stock option grants. *See* Morrissey Decl., ¶¶10-14; Steinberg Aff., III(B). *See also In re Atmel Corp. Derivative Litig.*, No. C-06-04592 JF (HRL), slip. op. at 20 (N.D. Cal. Mar. 31, 2010) (in considering the value of the corporate governance reforms in the settlement of a shareholder derivative stock option backdating action, the court noted that "the adopted reforms were designed specifically to prevent the practices that led to the restatement") (Compendium at 49).[4] Indeed, "reputable studies evidence that strong corporate governance measures redound to the benefit of the subject company, its shareholders, and the price of the subject company's common stock." Steinberg Aff., IV. As Professor Morrissey opines: "the direct value to Fossil's shareholders from the totality of the reforms contemplated by the settlement could . . . be well in excess of several hundred million dollars." Morrissey Decl., ¶124. The adoption of the corporate governance reforms alone have provided the basis for the approval of many recent derivative settlements. *See, e.g.*, *In re Rambus Inc. Derivative Litig.*, No. C 06-3513 JF (HRL), 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) (court approved settlement of shareholder derivative stock option backdating action and found "substantial benefit" to the company where settlement with corporate governance reforms similar to here "provide[d] long term remedial measures . . . specifically designed to protect the shareholders"); *Travis v. Mittelstaedt*, No. 2:06-cv-02341-JAM-GGH, slip op. (E.D. Cal. July 16, 2009) (approving settlement of backdating litigation

---

4 A copy of this decision as well as other unreported decisions cited herein are collected in the Compendium of Unreported Authorities in Support of Plaintiffs' Motion for Final Approval of Derivative Settlement Under Federal Rule of Civil Procedure 23.1 ("Compendium"), submitted herewith.

where relief constituted improvements to option granting procedures and policies for review of equity compensation and controls) (Compendium at 99-104).[5]

### 5. The Complexity, Expense, and Likely Duration of This Litigation Supports Approval of the Settlement

Another factor identified by the Fifth Circuit in determining the fairness of a settlement is the complexity, duration, and risks of further litigation. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968) (court must consider, *inter alia*, "the complexity, expense, and likely duration of such litigation"); *Manchaca*, 927 F. Supp. at 966. Shareholder derivative actions are notoriously complicated actions that involve convoluted legal and factual issues that can be litigated to a conclusion on the merits only at great expense over an extended period of time. *See Pac. Enters.* 47 F.3d at 378; *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) ("'Settlements of shareholder derivative actions are particularly favored because such litigation "is notoriously difficult and unpredictable."'"). This case is not, and would not have been, an exception to this rule. "Litigation relating to such fact-intensive and difficult-to-prove claims would . . . be extraordinarily complicated and time consuming, and require expert testimony." *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077, at *62 (N.D. Tex. Nov. 8, 2005) (citing *In re Elec. Data Sys. Corp. Sec. Litig.*, 226 F.R.D. 559, 571 (E.D. Tex. 2005)).

---

5 *See also Bacas v. Way*, No. 4:07-CV-00456, slip op. (S.D. Tex. Apr. 1, 2008) (court approved settlement of stock option backdating litigation where relief constituted corporate governance enhancements) (Compendium at 3-8); *Karstedt v. Isenberg*, No. 4:07-cv-00509, slip op. (S.D. Tex. May 14, 2008) (court approved settlement where consideration was corporate governance changes in stock option backdating action) (Compendium at 73-88); *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA (JCS), 2009 U.S. Dist. LEXIS 24973, at *11-*12 (N.D. Cal. Mar. 18, 2009) (court found substantial benefit conferred through corporate governance reforms including, as here, enhanced director independence, board composition, and additional strengthening of internal controls in a stock option backdating action); *City of Pontiac Gen. Employees' Ret. Sys. v. Langone*, No. 2006-cv-122302, slip op. (Fulton County Ga. June 10, 2008) (court approved corporate governance settlement related to stock option backdating action) (Compendium at 9-16).

If not for this settlement, the litigation would have continued to be fiercely contested by the parties. The alleged wrongdoing took place beginning in 1999. Discovering all of the relevant documents and witnesses would have proved difficult. Continued litigation would also be complex, costly, and of substantial duration. Document discovery would need to be commenced and completed, depositions would have to be taken, experts would need to be designated and expert discovery conducted, the Individual Defendants' expected motions for summary judgment would have to be briefed and argued, and a trial could occupy attorneys on both sides and the Court for weeks. Moreover, any judgment favorable to Plaintiffs would likely be the subject of post-trial motions and appeal, which would prolong the case for years with the ultimate outcome uncertain.

In contrast, the settlement provides immediate and substantial benefits to Fossil and its shareholders and avoids years of delay, added expense, and uncertainty. A prolonged period of pretrial proceedings and a lengthy and uncertain trial would not serve the interest of Fossil and its shareholders in light of the substantial benefits provided by the settlement. Thus, the prospect of continued protracted expensive and uncertain litigation strongly supports approval of the settlement.

#### 6. The Opinion of Plaintiffs' Counsel Favors Approval of the Settlement

Courts have recognized that the opinion of experienced counsel who litigated the case, negotiated the compromise, and support the settlement is entitled to considerable weight. *Reed*, 703 F.2d at 175; *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982); *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980); *Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 489 (E.D. Pa. 1985). Furthermore, in considering the fairness of the settlement, the trial court is entitled to rely upon the judgment of experienced counsel for the parties. The trial judge, absent fraud or collusion, should be hesitant to substitute its own judgment for that counsel. *Cotton*, 559 F.2d at 1330.

In *Lyons v. Marrud, Inc.*, No. 66 Civ. 415, 1972 U.S. Dist. LEXIS 13401, at *5 (S.D.N.Y. June 6, 1972), the court noted that:

> Experienced and competent counsel have assessed these problems and the probability of success on the merits. They have concluded that compromise is well-advised and necessary. The parties' decision regarding the respective merits of their positions has an important bearing on this case.

Here, Plaintiffs' Counsel not only have extensive experience in the area of shareholder representative litigation but have been at the forefront of investigating stock option abuses and are involved in the prosecution of numerous actions on behalf of shareholders alleging stock option abuses in courts nationwide. Jaconette Decl., ¶93. As a result of counsel's extensive experience in these types of cases, they have a unique insight into the legal and factual issues presented. Plaintiffs' Counsel used that expertise and experience to effectively and efficiently prosecute the litigation and reach a highly favorable result for Fossil and its shareholders. Moreover, Fossil, on whose behalf this Action was brought, fully supports the settlement and acknowledges that the settlement provides substantial benefits upon the Company and its shareholders. *See* Stipulation, ¶2.3.

The assistance of a neutral, well respected mediator, Justice Wiener, also assured a sound result. As Justice Wiener states: "the terms agreed upon, including the payment of attorneys' fees, reflect a reasonable balance of the competing views and interests I have seen in the litigation." Wiener Decl., ¶8; *see also In re AOL Time Warner S'holder Derivative Litig.*, No. 02 Civ. 6302(SWK), 2006 WL 2572114, at *3 (S.D.N.Y. Sept. 6, 2006) ("'a court-appointed mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure'") (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)).

## IV. THE NEGOTIATED AMOUNT OF ATTORNEYS' FEES AND EXPENSES IS FAIR AND REASONABLE

As a result of the substantial benefits conferred upon Fossil and its shareholders, Fossil has agreed to pay to Plaintiffs' Counsel 85,423 shares of Fossil common stock as of May 4, 2011, subject to a downward adjustment if Fossil's stock price increases and an upward adjustment if Fossil's stock price decreases, and the right to acquire options for up to 32,000 shares of Fossil common stock. Stipulation, ¶¶5.1-5.7. The fee was negotiated with the assistance of Justice Wiener after hard fought settlement negotiations and after the parties had agreed upon the substantive terms of the settlement. The parties' agreement on the amount of attorneys' fees and expenses is an appropriate resolution of the issue of fees and expenses, and "is within the range of fees paid in similar shareholder derivative cases and other complex litigation." Wiener Decl., ¶8.[6]

The United States Supreme Court has endorsed this type of consensual resolution of attorneys' fee issues as the ideal toward which litigants should strive. In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the Supreme Court stated: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." Where, as here, there is no evidence of collusion and no detriment to the parties, the court should give "substantial weight to a negotiated fee amount." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga.

---

[6] *See, e.g., City of Pontiac Gen. Employees' Ret. Sys. v. Langone*, slip op. at ¶12 (awarding over $14 million in fees and expenses in connection with corporate governance stock option backdating settlement) (Compendium at 14); *In re BP P.L.C. Derivative Litig.*, No. 3AN-06-11929CI, slip op. at ¶19 (3d Judicial Dist. Anchorage, Alaska, May 7, 2008) (awarding $12.1 million in fees and expenses in connection with corporate governance settlement) (Compendium at 67); *Unite Nat'l Ret. Fund v. Watts*, No. 04-cv-3603 (DMC), 2005 U.S. Dist. LEXIS 26246, at *18 (D.N.J. Oct. 28, 2005) (awarding $9.2 million based on "the great benefit conferred upon [the company] as a result of the new corporate governance principles provided for in the settlement agreement"); *Moore v. Brown*, No. 6:04-cv-77, slip op. at ¶¶1-3 (E.D. Tex. Mar. 10, 2008) (awarding $6 million attorneys' fees in connection with corporate governance settlement) (Compendium at 90).

2001). Thus, the court's role in a case where counsel for the company has negotiated a fee award in a derivative case is very different from a statutory fee shifting case, in which the defendants have not agreed to pay counsel's fees and thus reserve the right to challenge any application.

The amount negotiated and agreed to reflects the parties' and Justice Wiener's experience as to what is appropriate for the benefits obtained and will fairly compensate Plaintiffs' Counsel for their work in obtaining this outstanding result for the Company and its shareholders. Indeed, the negotiation over the amount of attorneys' fees and expenses to be paid to Plaintiffs' Counsel included "a thorough examination of the factors bearing on the reasonableness of attorneys' fees in shareholder derivative litigation." Wiener Decl., ¶6. Plaintiffs' Counsel negotiated with their adversaries who saw the efforts of Plaintiffs' Counsel first hand. Fossil was represented by Fish & Richardson during these negotiations, a highly respected law firm with an excellent reputation for the vigorous advocacy of corporate defendants in shareholder litigation in courts nationwide. The Company's decision to approve the settlement was an exercise of its business judgment that the settlement, including the amount of attorneys' fees, was fair, reasonable, and in the best interests of Fossil.

Moreover, under the "substantial benefit" doctrine, counsel who prosecute a shareholders' derivative case which confers benefits on the corporation are entitled to an award of attorneys' fees and costs. *Boeing Co. v. Van Gemert*, 444 U.S. 476 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970); *NVIDIA*, 2009 U.S. Dist. LEXIS 24973, at *12. In *Mills*, the Supreme Court stated that "an increasing number of lower courts have acknowledged that a corporation may receive a 'substantial benefit' from a [stockholders' action], justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature," and that "regardless of the relief granted, private stockholders' actions of this sort 'involve corporate therapeutics,' and furnish a benefit to all

shareholders by providing an important means of enforcement of the proxy statute." 396 U.S. at 395, 396 (citations omitted); *accord Maher*, 714 F.2d at 461.

Here, there is no question that the financial benefits and the corporate governance reforms achieved as a result of Plaintiffs' prosecution and settlement of the Action provide substantial benefits to Fossil and its shareholders. Morrissey Decl., ¶¶58-124; Steinberg Aff., III; Stipulation, §IV; *see also Maher*, 714 F.2d at 461 ("effects of the suit on the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment"). As a result of the reforms implemented by the settlement, Fossil will be protected against future instances of the wrongdoing alleged in the Action as well as reap the benefits of greater board-level accountability, independence, and transparency. Morrissey Decl., ¶108; Steinberg Aff., III(B). These corporate governance measures will not only reduce the chance of the improprieties alleged by Plaintiffs occurring in the future, but also will make directors and management more effective representatives of shareholders. *Id.*

In light of the substantial benefits conferred upon Fossil by the efforts of Plaintiffs' Counsel, the attorneys' fees and expenses, which were negotiated at arm's length by sophisticated parties and their counsel familiar with complex shareholder litigation with the substantial assistance of Justice Wiener, reflect an appropriate fee and expense amount for the benefits obtained. Wiener Decl., ¶8. Accordingly, the separately negotiated attorneys' fees and expenses should be approved.

## V. CONCLUSION

For all the reasons set forth herein and in the entire record, the settlement provides substantial benefits for Fossil and its shareholders and is clearly fair, reasonable, and adequate. Thus, Plaintiffs respectfully request that the Court grant the motion in its entirety and enter the Final Judgment and Order of Dismissal with Prejudice.

DATED: June 2, 2011

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
TRAVIS E. DOWNS III (travisd@rgrdlaw.com)
JAMES I. JACONETTE (jamesj@rgrdlaw.com)
JEFFREY D. LIGHT (jeffl@rgrdlaw.com)
ROBERT R. HENSSLER JR. (bhenssler@rgrdlaw.com)

s/ James I. Jaconette
JAMES I. JACONETTE

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ROBBINS UMEDA LLP
BRIAN J. ROBBINS
(brobbins@robbinsumeda.com)
CAROLINE A. SCHNEURER
(cschneurer@robbinsumeda.com)
SHANE P. SANDERS
(ssanders@robbinsumeda.com)
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: 619/525-3990
619/525-3991 (fax)

Co-Lead Counsel for Plaintiffs

KENDALL LAW GROUP, LLP
JOE KENDALL (jkendall@kendalllawgroup.com)
State Bar No. 11260700
3232 McKinney Avenue, Suite 700
Dallas, TX 75204
Telephone: 214/744-3000
214/744-3015 (fax)

Liaison Counsel

SULLIVAN, WARD, ASHER & PATTON, P.C.
CYNTHIA J. BILLINGS (cbillings@swappc.com)
25800 Northwestern Highway
1000 Maccabees Center
Southfield, MI 48075-1000
Telephone: 248/746-0700
248/746-2760 (fax)

THE SHUMAN LAW FIRM
KIP B. SHUMAN (kip@schumanlawfirm.com)
885 Arapahoe Blvd.
Boulder, CO 80302
Telephone: 303/861-3003
303/830-6920 (fax)

Additional Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2011, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 2, 2011.

s/ James I. Jaconette
JAMES I. JACONETTE

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail:jamesj@rgrdlaw.com

# Mailing Information for a Case 3:06-cv-01672-F

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Aelish M Baig**
  aelishb@rgrdlaw.com,e_file_sf@rgrdlaw.com
- **Willie Briscoe**
  wbriscoe@thebriscoelawfirm.com
- **Roger F Claxton**
  roger@claxtonlaw.com
- **Travis E Downs , III**
  travisd@rgrdlaw.com,e_file_sd@rgrdlaw.com
- **Benny C Goodman , III**
  bennyg@rgrdlaw.com,e_file_sd@rgrdlaw.com
- **Andrew R Graben**
  graben@fr.com,nevans@fr.com
- **Geoffrey S Harper**
  harper@fr.com
- **Terence J Hart**
  terry.hart@bgllp.com,trena.jackson@bgllp.com
- **Robert R Henssler , Jr**
  bhenssler@rgrdlaw.com
- **Robert J Hill**
  rhill@hillandhill-law.com
- **James I Jaconette**
  jamesj@rgrdlaw.com,ptiffith@rgrdlaw.com,e_file_sd@rgrdlaw.com
- **Joe Kendall**
  administrator@kendalllawgroup.com,jkendall@kendalllawgroup.com
- **Jeffrey D Light**
  jeffl@rgrdlaw.com,jstark@rgrdlaw.com
- **Brian J Robbins**
  notice@robbinsumeda.com
- **Karl A Rupp**

krupp@kendalllawgroup.com

- **Caroline A Schnurer**
  notice@robbinsumeda.com,mozaki@robbinsumeda.com,ssanders@robbinsumeda.com

- **John B Scott**
  jscott@scottyung.com,admin@scottyung.com,skitchens@scottyung.com

- **Kip B Shuman**
  kip@shumanlawfirm.com

- **Steven H Stodghill**
  stodghill@fr.com,bhunter@fr.com

- **Scott Cashion Thomas**
  sthomas@fr.com,nevans@fr.com

- **E Lawrence Vincent**
  lvincent@staleypc.com,larryvin@gmail.com

- **Shawn A Williams**
  shawnw@rgrdlaw.com

- **Andrew W Yung**
  ayung@scottyung.com,admin@scottyung.com,skitchens@scottyung.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Howard B Wiener**
Honorable Howard B Wiener
501 West Broadway
19th Floor
San Diego, CA 92101